## Board of Commissioners of Cook County v. William Harley.

1. COUNTY COMMISSIONERS OF COOK COUNTY—*Right of, to Delegate Authority.*—Under the law in force in 1885 the county commissioners of Cook county had no power to delegate to any officer, agent or committee, authority to make any contract for the expenditure of public money exceeding the sum of $500.

2. VERDICTS—*No Ground for Interference.*—The court discuss the evidence in this case and conclude that no cause is shown by the record for any interference by this court with the verdict returned by the jury that tried the case, and that it must be treated as conclusive of the questions of fact involved.

**Assumpsit,** on the common counts. Appeal from the Circuit Court of Cook County: the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1897. Affirmed. Opinion filed April 8, 1898.

ROBERT S. ILES, county attorney, and FRANK L. SHEPARD, assistant county attorney, for appellant.

WING, CHADBOURNE & LEACH, attorneys for appellee.

MR. JUSTICE HORTON DELIVERED THE OPINION OF THE COURT.

January 31, 1885, an agreement in writing was entered into by and between the appellee and Cook county, Illinois, for the erection of the second one-ward building of the County Insane Asylum at Dunning. It was therein provided that appellee should erect such building according to plans and specifications thereto attached, for the sum of $80,575.83, to be paid to him by said county. The building was completed in February, 1886. This suit was brought April 6, 1893, and is to recover upon a claim for extras alleged to have been furnished by the appellee in the construction of said building, amounting to $18,000. January 27, 1897, a jury returned a verdict in favor of appellee for $6,402, and March 13, 1897, judgment was entered on said verdict in the Circuit Court. From that judgment this appeal is prosecuted by the county commissioners.

Said contract was made by what has been called the "boodle" county board. The building in question was erected under the supervision of that board and its committees. No record or memoranda as to any extras, or any contract or agreement as to extras, was kept or preserved by any committee, or member of a committee, or any person representing the county. As one of the then county commissioners testified, "When bills were presented for extras they trusted to their memory." Also that "The boodle charges against the board were just about looming up at that time."

Nearly a year after said building had been completed and accepted and paid for by the county, "the joint committee on public buildings and charities" recommended the payment to appellee of the sum of $15,057.12 for such extras, although the architect's estimate therefor was $6,022.

At the trial but three witnesses were called by appellee and none by appellant. Referring to this, and following a reference to the recommendation of the committee, made nearly a year after the building had been completed, that the sum of over $15,000 be paid for such extras, counsel in their brief for appellant say that "Shortly after, members of the board and of this committee were indicted, tried and convicted of conspiracy to defraud the county, and during said trial upon said charge of conspiracy, the documents and records of the county board were used in said trial, and that, upon search being made prior to the trial of this suit, all of the documents in the Harley case were gone, and that the large tin box in which they were kept, and which was marked 'Harley,' was empty. Hence the defendants could produce no evidence, except the written record of the board, which corresponded with the printed proceedings of the board introduced by the plaintiff."

The case was not tried until about eleven years after the building in question had been completed and accepted, and the contract price therefor paid in full. The claim for extras equals about $22\frac{1}{2}$ per cent of the contract.

The county commissioners, acting as a board, never authorized any extra work or material for said building. Whatever was done in that regard was done by a committee of said board, or members of such a committee. The county commissioners had at that time no power to delegate to any officer, agent or committee, authority to make any contract for the expenditure of public money exceeding the sum of $500. Rev. Stat. 1885, Ch. 34, Sec. 61.

Appellant contends that the contracts for extras (if any such contracts were ever made) were for more than $500 each; that they were made by a committee, or members of a committee; that appellee, in his bill of particulars, has separated the alleged extras into many items, each being for less than $500, for the purpose of avoiding the law; and that therefore he can not lawfully recover in this case except for one item of $250, specified in their brief.

If it be true that the claim of appellee has been separated into items in the manner and for the purpose indicated, then he ought not to recover for any part of the claim as to which the contract was for over $500. That this case "is surrounded by circumstances   *   *   *   which cast grave suspicion upon the good faith of the transactions set out in the plaintiff's bill of particulars" must be conceded. Take for instance the excavating for the foundation, which was to have been done by the wards of the county, but which, it is claimed, was not properly done by them. Counsel for appellee, in their brief, say that appellee "did the work of excavating for the foundations and basement, and did it well, and the aggregate cost thereof *amounted to thousands of dollars.*" Yet in the bill of particulars the excavating is separated into a number of items, such as, "for the south half of the bottom of the building;" for "trenches;" for the "ventilating shaft;" for the "swimming bath;" for "east side of bath;" for "the north half" of the building; "in west foul air duct;" "foul air duct across the main hall," etc. Each of these numerous excavation items is for less than $500. So each item in the bill for extras, aggregating about $18,000, is for $500 or less.

If the alleged fraudulent separation of the other portions of the bill of particulars was as apparent as that in regard to the excavations, the contention by counsel for appellant should be sustained. But that is not the case. This question was evidently carefully considered by the trial court. In the somewhat voluminous instructions given, this question was fairly submitted to the jury. The third instruction given to the jury on behalf of appellant is as follows:

"If the jury believe from the evidence that some or all of the items in the plaintiff's bill of particulars charged do not constitute separate and distinct contracts, but that any two or more of said items in said bill of particulars charged belong together and constitute one and the same contract, and that the sum of said items so taken together in one contract involves the expenditure of public money exceeding the sum of five hundred dollars ($500), and that the said items of labor and materials so taken together in one contract, were not furnished pursuant to any contract with the county board as a board, but were furnished solely upon the order of certain officers, commissioners or committees, then, in such case, the plaintiff is not entitled to recover as to each or any of said items, which, taken together, constitute one separate and distinct contract involving the expenditure of public money exceeding five hundred dollars ($500), and that as to such items, they should find for the defendant."

There is no controverted question of law presented by counsel or apparent to the court in this case. The claim of appellee is for $18,000. The verdict of the jury is for a little over $6,000, being almost exactly the amount certified by the architect ten years prior. It may be that the jury rejected every item in appellee's bill of particulars which is subject to the objection urged. As the jury disallowed about two-thirds of the amount of appellee's claim, this may be assumed. Counsel for appellee in their brief say that a detailed bill of particulars was filed, but as they also say, it is not, as a document, included in appellant's bill of exceptions. The details as to items in it are selected from testimony.

There is no cause shown by this record for any interference by this court with the verdict of the jury. That verdict is conclusive.

The judgment of the Circuit Court is affirmed.